

John P. Kristensen (SBN 224132)
**KRISTENSEN LAW GROUP**
120 Santa Barbara St., Suite C9
Santa Barbara, California 93101
Telephone: (805) 837-2000
*john@kristensen.law*

Jarrett L. Ellzey*
Texas Bar No. 24060864
**EKSM, LLP**
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
*jellzey@eksm.com*

**ATTORNEYS FOR PLAINTIFF**
(* denotes *pro hac vice* forthcoming)

### THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| WILLIAM WOODWARD, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-8858 |
| | **CLASS ACTION** |
| Plaintiffs, | **COMPLAINT FOR DAMAGES** |
| vs. | |
| LA FINANCIAL CREDIT UNION, a California Corporation, inclusive, | 1. **Negligence;** |
| | 2. **Breach of Implied Contract;** |
| | 3. **Unjust Enrichment;** |
| Defendants. | 4. **Violation of Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*;** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff William Woodward ("Plaintiff" or "Woodward") brings this Class Action Complaint against LA Financial Federal Credit Union ("LA Financial" or "Defendant"), on behalf of himself individually and on behalf of all others similarly situated ("Class Members"), and alleges, upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

## I.    NATURE OF THE ACTION

1.    Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information including, but not limited to, Plaintiff's and Class Members' full names, Social Security Numbers, and financial account information (collectively, "PII" or "Private Information").

2.    LA Financial is a credit union that operates branches in California and Arizona.

3.    Defendant was subject to a cyberattack on or around June 10, 2024 (the "Data Breach"). Defendant investigated the Data Breach and determined that an unauthorized party gained access to a LA Financial employee's email account, and with it the Private Information of Plaintiff and other current and former members/clients of LA Financial Federal credit union.

4.    On September 11, 2024, Defendant mailed Plaintiff a "Notice of Data Breach" advising him that the data exposed in the Data Breach included Plaintiff's "first and last name Social Security Number, and other sensitive information" Notice of Data Breach, Exhibit A hereto.

5.    Plaintiff brings this class action lawsuit on behalf of himself and those similarly situated to address Defendant's inadequate safeguarding of Class Members' Personal Information that it collected and maintained, and for failing to provide adequate notice to Plaintiff and other Class Members that their information was likely accessed by an unknown third party and precisely what type of information was accessed.

6.    Defendant maintained the Private Information in a reckless and

negligent manner. In particular, the Private Information was maintained on Defendant's computer system and network in a condition vulnerable to cyberattack. Upon information and belief, the mechanism of the Data Breach and potential for improper disclosure of Plaintiff's and Class Members' Personal Information was a known risk to Defendant and thus Defendant was on notice that failing to take steps necessary to secure the Personal Information from those risks left that information in a dangerous condition.

7.    Because of the Data Breach, Plaintiff and Class Members suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack and the substantial and imminent risk of identity theft.

8.    By obtaining, collecting, using, and profiting from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant admits that the unencrypted Private Information was impacted during the Data Breach.

9.    The exposed Private Information of Plaintiff and Class Members can—and likely will—be sold on the dark web. Indeed, Plaintiff's and Class Members' Private Information has likely already been published on the dark web.

10.    Hackers can offer for sale the unencrypted, unredacted Private Information to criminals. Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers— the gold standard for identity thieves.

11.    This Private Information was compromised because of Defendant's negligent and/or careless acts and omissions and the failure to protect the Private Information of Plaintiff and Class Members.

12.    Plaintiff and Class Members had no idea their Private Information had

been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their lifetimes.

13. Plaintiff brings this action on behalf of all persons whose Private Information was compromised because of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

14. Plaintiff and Class Members have suffered injuries because of Defendant's conduct. These injuries include:

(i) lost or diminished value of Private Information;

(ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

(iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including, but not limited to, lost time; and

(iv) the continued and exacerbated risk to their Private Information which:

a. remains unencrypted and available for unauthorized third parties to access and abuse; and

b. may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

15. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement

adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded. Defendant further disregarded their rights by failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures for the encryption of data, even for internal use.

16.    Because of the Data Breach, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II.    PARTIES

17.    Plaintiff William Woodward is a Citizen of Lake Havasu, Arizona. He received notice from Defendant that it lost control of his PII.

18.    Defendant LA Financial Federal Credit Union is a corporation formed under the laws of California and having its principal place of business in Los Angeles, County. It may be serviced via its Carol Galizia, President and CEO at 50 East Foothill Blvd. Ste 300, Arcada, CA 91006-2314.

## III.    VENUE AND JURISDICTION

19.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because there is diversity between the Plaintiff and the Defendant and this case seeks over $75,000.  Furthermore, there is jurisdiction under the Class Action Fairness Act ("CAFA").

20.    This Court has general personal jurisdiction over Defendant, because Defendant has its principal place of business ("nerve center") in Los Angeles County.

21.    Venue is further proper in this Court because the principal acts and omissions were committed in Los Angeles County.

///

## IV.  ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### (Against All Defendants)

### A.  DEFENDANT'S BUSINESS

22.    Defendant is a California-based credit union that provides financial services to customers in the Los Angeles County.

23.    In the ordinary course of applying for an account with LA Financial, each member must provide (and Plaintiff did provide) Defendant with sensitive, personal, and private information, such as his or her:

- address;
- telephone number;
- date of birth;
- Social Security number;
- financial account information.

24.    Defendant agreed to and undertook legal duties to maintain the Private Information entrusted to them by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws.

25.    The customer information held by Defendant in its computer system and network included the Private Information of Plaintiff and Class Members.

### B.  THE DATA BREACH

26.    A Data Breach occurs when cyber criminals intend to access and steal Private Information that has not been adequately secured by a business entity like Defendant.

27.    According to Defendant's September 11, 2024, notice letter (Exhibit A),

On or around June 10, 2024, we discovered suspicious activity potentially related to an employee email account. Upon discovery, we took swift action to secure our email system and network. We immediately began working with third-party computer specialists to

investigate the full nature and scope of the incident. Based on the investigation, it was determined that one LA Financial employee email account was subject to unauthorized access. As a result, together with third-party specialists, we began a comprehensive review of the contents of that account to determine the type of information contained therein and to whom that information related. While this comprehensive process remains ongoing, we are notifying those individuals known to date whose information may have been subject to unauthorized access.

. . .

The information believed to be at risk may include your first and last name, in combination with your Social Security Number and other sensitive information.

28.    Defendant had obligations created by contract, industry standards, common law, and representations made to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

29.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

30.    Defendant was or should have been aware of the significant risk that cybercriminals would attempt to steal Plaintiff's and Class Members' Private Information.

31.    As reported by the Identity Theft Resource Center, in 2023 a record 3,205 data breaches occurred, resulting in around 353,027,892 individuals'

information being compromised, a 78% increase from 2022.[1] Of the 2023 recorded data breaches, 744 of them, or 23%, were in the financial services industry.[2]

32.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

## C.    DEFENDANT FAILED TO COMPLY WITH FTC GUIDELINES

33.    The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should shape all business decision-making.

34.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[3] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[4]

35.    The FTC further recommends that companies not maintain PII longer

---

[1] *See* Identity Theft Resource Center, *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last visited October 10, 2024).
[2] *Id.*
[3] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), *available at* www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited October 10, 2024).
[4] *Id.*

than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

36.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect client data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions also clarify the measures businesses must take to meet their data security obligations.

37.    Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

38.    Defendant was always fully aware of its obligation to protect the PII of its customers. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**D.    DEFENDANT FAILED TO COMPLY WITH INDUSTRY STANDARDS**

39.    As shown above, large employers are widely known to be particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

40.    Several best practices have been identified that at a minimum should be implemented by employers like Defendant, including, but not limited to, educating all; strong passwords; multi-layer security, including firewalls, antivirus, and antimalware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

41.     Other best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

42.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including, without limitation, PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

43.     These foregoing frameworks are existing and applicable industry standards for any business that handles and stores large volumes of sensitive information, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

**E.    DEFENDANT'S BREACH**

44.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and its data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.     Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.     Failing to adequately protect customers' Private Information;

c.     Failing to properly monitor its own data security systems for existing intrusions;

d.     Failing to train employees in the proper handling of emails containing

1   how the cyberattackers were able to first access Defendant's networks,

2   and to and maintain adequate email security practices;

e.   Failing to put into place proper procedures, software settings, and data security software protections to adequately protect against a blunt force intrusion;

f.   Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act; and

g.   Failing to adhere to industry standards for cybersecurity.

45.   As the result of computer systems needing security upgrading, inadequate procedures for handling emails containing ransomware or other malignant computer code, and inadequately trained employees who opened files containing the ransomware virus, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

46.   Accordingly, as outlined below, Plaintiff and Class Members now face an increased risk of fraud and identity theft.

***Because of Defendant's Failure to Safeguard Private Information, Plaintiff and the Class Members Have and Will Experience Substantial Harm in the Form of Risk of Continued Identity Theft.***

47.   Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

48.   The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes. According to experts, one out of four data breach notification recipients become a victim of identity fraud.

49.   Because of Defendant's failures to prevent—and to timely detect—the Data Breach, Plaintiff and the proposed Class have suffered and will continue to

suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.    The loss of the opportunity to control how their PII is used;

    b.    The diminution in value of their PII;

    c.    The compromise and continuing publication of their PII;

    d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.    Delay in receipt of tax refund monies;

    g.    Unauthorized use of stolen PII; and

    h.    The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

50.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

51.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals often post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

52.    It can take victims years to spot identity or PII theft, giving criminals plenty of time to milk that information for cash.

53.    One such example of criminals using PII for profit is the development of "Fullz" packages.

54.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

55.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Class's stolen PII is being misused, and that such misuse is traceable to the Data Breach.

56.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims, and the numbers are only rising.

57.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good" Defendant did not rapidly report to Plaintiff and the Class that their PII had been stolen.



58.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

59.     In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

60.     Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and the Class will need to remain vigilant against unauthorized data use for years or even decades to come.

61.     The Federal Trade Commission ("FTC") has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[5]

62.     The FTC has also issued Many guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires:

(1)     encrypting information stored on computer networks;

---

[5] Statement of FTC Commissioner Pamela Jones Harbour-Remarks Before FTC Exploring Privacy Roundtable, (Dec. 7, 2009), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited October 4, 2024).

(2)     retaining payment card information only as long as necessary;

(3)     properly disposing of personal information that is no longer needed;

(4)     limiting administrative access to business systems;

(5)     using industry-tested and accepted methods for securing data;

(6)     monitoring activity on networks to uncover unapproved activity;

(7)     verifying that privacy and security features function properly;

(8)     testing for common vulnerabilities; and

(9)     updating and patching third-party software.

63.     According to the FTC, unauthorized PII disclosures ravage consumers' finances, credit history and reputation, and can take time, money and patience to resolve the fallout.[6] The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

64.     Defendant's failure to properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

## V.    PLAINTIFF'S EXPERIENCE

65.     Plaintiff William Woodward is and at all times mentioned herein was an individual citizen of Arizona, residing in the city of Lake Havasu.

66.     Plaintiff was a member/customer at LA Financial, requiring him to provide his Private Information to Defendant.

67.     After Plaintiff provided Private Information, Defendant suffered a Data Breach.

_____

[6] *See* Taking Charge, What to Do If Your Identity is Stolen, FTC, at 3 (2012), *available at* https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last visited October 4, 2024).

68.    Plaintiff reasonably expected and understood that Defendant would take, at a minimum, industry standard precautions to protect, maintain, and safeguard his Private Information from unauthorized users or disclosure, and would timely notify him of any data security incidents related to the same. Plaintiff would not have provided his Private Information to Defendant had he known that Defendant would not take reasonable steps to safeguard it.

69.    Plaintiff is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff also stores any documents containing his sensitive information in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for online accounts containing sensitive information.

70.    Plaintiff received a Notice Letter, dated September 11, 2024, of the data breach. On information and belief, Plaintiff's personal information, including first and last name, in addition to Social Security Number, financial account and other sensitive information may have been infiltrated by an unauthorized third party.

71.    Because of the Data Breach and at the recommendation of Defendant and its Notice, Plaintiff made reasonable efforts to mitigate the effect of the Data Breach, including, but not limited to, researching the Data Breach and monitoring his credit and financial statements.

72.    Plaintiff has spent much time responding to the dangers from the Data Breach and will continue to spend valuable time he otherwise would have spent on other activities, including, but not limited to work and recreation.

73.    Even with the best response, the harm caused to Plaintiff cannot be undone.

74.    Plaintiff knows that cybercriminals often sell Private Information, and that his PII could be abused months or even years after a data breach.

75.    Had Plaintiff been aware that Defendant's computer systems were not secure, he would not have entrusted Defendant with his personal data.

## VI.    PLAINTIFF'S AND CLASS MEMBERS' DAMAGES

76.    To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Defendant has only offered 12 months of inadequate credit monitoring services, despite Plaintiff and Class Members being at risk of identity theft and fraud for the remainder of their lifetimes.

77.    The 12 months of credit monitoring offered to persons whose Private Information was compromised is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud.

78.    Defendant's credit monitoring advice to Plaintiff and Class Members places the burden on Plaintiff and Class Members, rather than on Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the Data Breach.

79.    Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

80.    Plaintiff's Private Information was compromised and exfiltrated by cyber-criminals as a direct and proximate result of the Data Breach.

81.    Plaintiff was damaged in that his Private Information is in the hands of cyber criminals.

82.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

83.    As a direct and proximate result of Defendant's conduct, Plaintiff and

Class Members have been forced to expend time dealing with the effects of the Data Breach.

84.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

85.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

86.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

87.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Many courts have recognized the propriety of loss of value damages in related cases.

88.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

89.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

    a.    Reviewing and monitoring financial and other sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

    b.    Purchasing credit monitoring and identity theft prevention;

c.      Placing "freezes" and "alerts" with reporting agencies;

d.      Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e.      Contacting financial institutions and closing or modifying financial accounts; and; and

f.      Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

90.     Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is inaccessible online and that access to such data is password protected.

91.     As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## VII.   PLAINTIFF'S AND CLASS ACTION ALLEGATIONS

92.     Plaintiffs brings this nationwide class action on behalf of himself and on behalf of others similarly situated under Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

93.     The Nationwide Class that Plaintiffs seek to represent is defined as follows:

> **All persons whose Private Information was actually or potentially accessed or acquired during the Data Breach (the "Class").**

94.     Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal

representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

95.    Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having an opportunity to conduct discovery.

96.    Numerosity, Fed R. Civ. P. 23(a)(l): Class Members are so Many that joinder of all members is impracticable. Upon information and belief, Defendant has thousands of customers whose Private Information may have been improperly accessed in the Data Breach, and each Class member is apparently identifiable within Defendant's records. For example as of 2023, Defendant was reporting $531M in assets and $410M in outstanding loans.[7]

97.    Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.    Whether Defendant's data security systems prior to and during the Data Breach adhered to industry standards;

e.    Whether Defendant owed a duty to Class Members to safeguard their

---

[7]https://www.lafinancial.org/wp-content/uploads/LafHav_AnnualReport2023_DIGITAL.pdf (last accessed October 15, 2024).

Private Information;

f.    Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g.    Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.    Whether Plaintiff and Class Members suffered legally cognizable damages from Defendant's misconduct;

i.    Whether Defendant failed to provide notice of the Data Breach promptly; and

j.    Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

98.    <u>Typicality,</u> Fed. R. Civ. P. 23(a)(3): Plaintiff claims are typical of those of other Class Members because all had their PII compromised because of the Data Breach, because of Defendant's misfeasance.

99.    <u>Policies Generally Applicable to the Class:</u> This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged here apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct toward the Class as a whole, not on facts or law applicable only to Plaintiffs.

100.    <u>Adequacy,</u> Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained

counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

101.   Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged here; it will permit many Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

102.   The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

103.   Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

104.   Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

///

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### NEGLIGENCE

#### (On Behalf of Plaintiff and All Class Members)

105.   Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

106.   Defendant required Plaintiff and Class Members to submit non-public personal information to do business with LA Financial.

107.   By collecting and storing this data in Defendant's computer property, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period and to give prompt notice to those affected in the case of a Data Breach.

108.   Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

109.   Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining financial services from Defendant.

110.   In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as

interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

111. Defendant further had a duty to use reasonable care in protecting confidential data because Defendant is bound by industry standards to protect confidential Private Information.

112. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.     Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.     Failing to adequately monitor the security of its networks and systems;

c.     Failing to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;

d.     Allowing unauthorized access to Class Members' Private Information;

e.     Failing to detect timely that Class Members' Private Information had been compromised;

f.     Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

g.     Failing to secure its stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

113. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

114. It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries

to Class Members.

115.   Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

116.   Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and unsecure manner.

117.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class Members.

## SECOND CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and All Class Members)

118.   Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

119.   When Plaintiff and Class Members provided their Private Information to Defendant in exchange for Defendant's services, they entered implied contracts with Defendant under which Defendant agreed to reasonably protect such information.

120.   Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

121.   In entering such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and adhered to industry standards.

122.   Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to

obtain adequate data security. Defendant failed to do so.

123.   Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

124.   Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that they adopted reasonable data security measures.

125.   Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

126.   Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

127.   As a direct and proximate result of Defendant's breach of the implied contracts, Class Members sustained damages as alleged here, including the loss of the benefit of the bargain.

128.   Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach.

129.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT

### (On Behalf of Plaintiff and All Class Members)

130.   Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

131.   Plaintiff brings this claim individually and on behalf of all Class

Members. This count is pled in the alternative to the second count above.

132.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue.

133.    As such, a portion of the revenue attributable to Plaintiff's and Class Members' labor is to be used to provide a reasonable level of data security.

134.    Plaintiff and Class Members conferred a monetary benefit on Defendant. They staffed Defendant's business and in so doing provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the wages that were the subject of the transaction and appropriate protection for their Private Information.

135.    Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

136.    Defendant enriched itself by saving the costs Defendant reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Rather than providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by using cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

137.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

138.    Defendant failed to secure Plaintiff's and Class Members' Private Information and thus did not provide full compensation for the benefit Plaintiff and Class Members provided.

139.   Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices alleged.

140.   If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

141.   Plaintiff and Class Members have no adequate remedy at law.

142.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

    a.    actual identity theft;

    b.    the loss of the opportunity to control how their Private Information is used;

    c.    the compromise, publication, and/or theft of their Private Information;

    d.    out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information;

    e.    lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft;

    f.    the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and

g.    future costs in terms of time, effort, and money to be expended to prevent, detect, contest, and repair the effect of the Private Information compromised because of the Data Breach for the rest of the lives of Plaintiff and Class Members.

143.    As a direct and proximate cause of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and or harm.

144.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ* ("UCL")**

**(On Behalf of Plaintiff and All Class Members)**

145.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

146.    Defendant is a "person" defined by Cal. Bus. & Prof. Code. §17201.

147.    Defendant violated Cal. Bus. & Prof. Code. §17200 et seq. (UCL) by engaging in unlawful, unfair and deceptive acts and practices.

148.    Defendant's 'unfair' acts and practices include:

•    Utilizing cheaper, ineffective security measures and diverting those funds to its own profit, instead of providing a reasonable level of security that would have preventing the hacking incident;

•    Failing to follow industry standard and the applicable, required and appropriate protocols, policies and/or procedures regarding the encryption of data;

•    Failing to timely and adequately notify Class Members about the Data Breach and the scope of same, so that Class Members could take

appropriate steps to mitigate the potential for identity theft and other damages;

- Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' PII; and

- Omitting, suppressing and concealing the material fact that Defendant did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII.

149.    Defendant has engaged in 'unlawful' business practices by violating multiple laws, including the FTC Act, 15 U.S.C. §45, GLBA, and California common law.

150.    Defendant's unlawful, unfair and deceptive acts and practices include:

- Failing to implement and maintain reasonable security and privacy measures to protect it's customers PII, which was a direct and proximate cause of the Data Breach;

- Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach;

- Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act 15 U.S.C. §45 and GLBA, which was a direct and proximate cause of the Data Breach;

- Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' personal information, including by implementing and maintaining reasonable security measures; and

• Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. §45 and GLBA.

151. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' personal information.

152. As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members' were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, time and expenses related to monitoring financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal information.

153. Defendant's violations were, and are, willful, deceptive, unfair and unconscionable.

154. Defendant's poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to pay Defendant and/or its agents for financial services, Plaintiff and other reasonable consumers understood and expected that they were, in part, paying for the product and/or service and necessary data security to protect the PII, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

155. Plaintiff and Class Members have lost money and property as a result of Defendant's conduct in violation of the UCL, as stated herein and above.

156. By deceptively storing, collecting, and disclosing their personal information, Defendant has taken money or property from Plaintiff and Class

Members.

157.   Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and Class Members' rights.

158.   Plaintiff and Class Members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs under Cal. *Code of Civ. Proc.* § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself and the Class described above seeks the following relief:

1. For an Order certifying the Class, and appointing Plaintiff and his Counsel to represent the Class;

2. For special damages according to proof;

3. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein relating to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

4. For equitable relief compelling Defendant to use appropriate methods and policies related to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

5. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Defendant's wrongful conduct;

6. For an Order directing Defendant to pay for not less than ten years of credit monitoring services for Plaintiff and the Class;

7. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

8. For an award of punitive damages, as allowable by law;

9. For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

10. Pre- and post-judgment interest on any amounts awarded; and

11. Any other relief that this court may deem just and proper.

Dated: October 15, 2024

**KRISTENSEN LAW GROUP & EKSM, LLP**

*/s/ John P. Kristensen*

John P. Kristensen
Jarrett L. Ellzey

**Attorneys for Plaintiff**

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all such triable claims.

Dated: October 15, 2024

**KRISTENSEN LAW GROUP & EKSM, LLP**

*/s/ John P. Kristensen*

John P. Kristensen
Jarrett L. Ellzey

***Attorneys for Plaintiff***

# EXHIBIT

# "A"



**LA Financial**
CREDIT UNION

P.O. Box 989728
West Sacramento, CA 95798-9728



Enrollment Code: <<ENROLLMENT>>
To Enroll, Scan the QR Code Below:

SCAN ME

Or Visit:
https://app.idx.us/account-creation/protect

<<First Name>> <<Last Name>>
<<Address1>>
<<Address2>>
<<City>>, <<State>> <<Zip>>
<<Country>>

September 11, 2024

<<NOTICE OF DATA BREACH>>

Dear <<First Name>> <<Last Name>>:

We are writing to inform you of a cyber security incident experienced by LA Financial Federal Credit Union ("LA Financial") that may have involved your information described below. While we have no evidence of attempted or actual misuse of any information as a result of this incident, we are providing you with information about the incident, our response, and steps you can take to help protect your information, should you feel it appropriate to do so.

**What Happened:** On or around June 10, 2024, we discovered suspicious activity potentially related to an employee email account. Upon discovery, we took swift action to secure our email system and network. We immediately began working with third-party computer specialists to investigate the full nature and scope of the incident. Based on the investigation, it was determined that one LA Financial employee email account was subject to unauthorized access. As a result, together with third-party specialists, we began a comprehensive review of the contents of that account to determine the type of information contained therein and to whom that information related. While this comprehensive process remains ongoing, we are notifying those individuals known to date whose information may have been subject to unauthorized access.

**What Information Was Involved:** The information believed to be at risk may include your first and last name, in combination with your <<exposed data elements>>.

**What We Are Doing:** Upon discovery, we immediately engaged third-party forensic specialists to investigate this matter. Out of an abundance of caution, we have arranged for you to activate, at no cost to you, online credit monitoring services for <<12/24>> months provided by IDX. Due to privacy laws, we cannot activate these services for you directly. Additional information regarding how to activate the complimentary identity monitoring service is enclosed. We have also provided additional information about steps you can take to help protect yourself against fraud and identity theft.

**What You Can Do:** We encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors over the next 12 to 24 months. You should report known or suspected incidents of identity theft to the relevant institution. Additionally, you can enroll to receive the complimentary identity monitoring services we are making available to you. You can also review the enclosed "Steps You Can Take to Help Protect Your Information" for additional resources.

**For More Information:** Should you have additional questions or concerns regarding this matter, please do not hesitate to contact our dedicated call center agents at 1-877-225-2075 during 6 am – 6 pm Pacific Time, Monday through Friday. You may also write to us at P.O. Box 6015, Pasadena, CA 91102-6015.

We take the privacy and security of the information in our care seriously, and sincerely regret any worry or inconvenience this incident may cause you and your family.

Sincerely,

LA Financial Federal Credit Union

## STEPS YOU CAN TAKE TO HELP PROTECT YOUR INFORMATION

**How do I enroll for the free services?**

**1**. **Website and Enrollment.** Scan the QR image or go to https://app.idx.us/account-creation/protect and follow the instructions for enrollment using your Enrollment Code provided at the top of the letter. Please note the deadline to enroll is December 11, 2024.

**2. Activate the credit monitoring** provided as part of your IDX identity protection membership. The monitoring included in the membership must be activated to be effective. Note: You must have established credit and access to a computer and the internet to use this service. If you need assistance, IDX will be able to assist you.

**3. Telephone.** Contact IDX at 1-877-225-2075 to gain additional information about this event and speak with knowledgeable representatives about the appropriate steps to take to protect your credit identity.

## ADDITIONAL ACTIONS TO HELP PROTECT YOUR INFORMATION

**Monitor Your Accounts**

We encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your credit reports/account statements for suspicious activity and to detect errors. Under U.S. law, you are entitled to one free credit report annually from each of the three major credit reporting bureaus, TransUnion, Experian, and Equifax. To order your free credit report, visit www.annualcreditreport.com or call 1-877-322-8228. Once you receive your credit report, review it for discrepancies and identify any accounts you did not open or inquiries from creditors that you did not authorize. If you have questions or notice incorrect information, contact the credit reporting bureau.

You have the right to place an initial or extended "fraud alert" on a credit file at no cost. An initial fraud alert is a one-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert lasting seven years. Should you wish to place a fraud alert, please contact any of the three credit reporting bureaus listed below.

As an alternative to a fraud alert, you have the right to place a "credit freeze" on a credit report, which will prohibit a credit bureau from releasing information in the credit report without your express authorization. The credit freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a credit freeze may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit. Pursuant to federal law, you cannot be charged to place or lift a credit freeze on your credit report. To request a credit freeze, you will need to provide the following information:

1. Full name (including middle initial as well as Jr., Sr., III, etc.);
2. Social Security number;
3. Date of birth;
4. Address for the prior two to five years;
5. Proof of current address, such as a current utility or telephone bill;
6. A legible photocopy of a government-issued identification card (e.g., state driver's license or identification card); and
7. A copy of either the police report, investigative report, or complaint to a law enforcement agency concerning identity theft, if you are a victim of identity theft.

Should you wish to place a fraud alert or credit freeze, please contact the three major credit reporting bureaus listed below:

| **TransUnion** | **Experian** | **Equifax** |
|---|---|---|
| 1-800-680-7289 | 1-888-397-3742 | 1-888-298-0045 |
| www.transunion.com | www.experian.com | www.equifax.com |
| **TransUnion Fraud Alert** | **Experian Fraud Alert** | **Equifax Fraud Alert** |
| P.O. Box 2000 | P.O. Box 9554 | P.O. Box 105069 |
| Chester, PA 19016-2000 | Allen, TX 75013 | Atlanta, GA 30348-5069 |
| **TransUnion Credit Freeze** | **Experian Credit Freeze** | **Equifax Credit Freeze** |
| P.O. Box 160 | P.O. Box 9554 | P.O. Box 105788 |
| Woodlyn, PA 19094 | Allen, TX 75013 | Atlanta, GA 30348-5788 |

**Additional Information**

You can further educate yourself regarding identity theft, fraud alerts, credit freezes, and the steps you can take to protect your personal information by contacting the credit reporting bureaus, the Federal Trade Commission (FTC), or your state Attorney General. The FTC also encourages those who discover that their information has been misused to file a complaint with them. The FTC may be reached at 600 Pennsylvania Ave. NW, Washington, D.C. 20580; www.identitytheft.gov; 1-877-ID-THEFT (1-877-438-4338); and TTY: 1-866-653-4261.

You have the right to file a police report if you ever experience identity theft or fraud. Please note that in order to file a report with law enforcement for identity theft, you will likely need to provide some proof that you have been a victim. Instances of known or suspected identity theft should also be reported to law enforcement, your state Attorney General, and the FTC. This notice has not been delayed by law enforcement.

*For District of Columbia residents*, the District of Columbia Attorney General may be contacted at: 400 6th St. NW Washington, D.C. 20001; 202-727-3400; and oag.dc.gov. LA Financial Federal Credit Union may be contacted at 50 E. Foothill Blvd., Suite 300, Arcadia, CA 91006, or at P.O. Box 6015, Pasadena, CA 91102-6015.

*For Maryland residents*, the Maryland Attorney General may be contacted at: 200 St. Paul Place, 16th Floor, Baltimore, MD 21202; 1-410-528-8662 or 1-888-743-0023; and www.marylandattorneygeneral.gov. LA Financial Federal Credit Union be contacted at 50 E. Foothill Blvd., Suite 300, Arcadia, CA 91006, or at P.O. Box 6015, Pasadena, CA 91102-6015.

*For New Mexico residents*, you have rights pursuant to the Fair Credit Reporting Act, such as the right to be told if information in your credit file has been used against you, the right to know what is in your credit file, the right to ask for your credit score, and the right to dispute incomplete or inaccurate information. Further, pursuant to the Fair Credit Reporting Act, the consumer reporting bureaus must correct or delete inaccurate, incomplete, or unverifiable information; consumer reporting agencies may not report outdated negative information; access to your file is limited; you must give your consent for credit reports to be provided to employers; you may limit "prescreened" offers of credit and insurance you get based on information in your credit report; and you may seek damages from violator. You may have additional rights under the Fair Credit Reporting Act not summarized here. Identity theft victims and active duty military personnel have specific additional rights pursuant to the Fair Credit Reporting Act. We encourage you to review your rights pursuant to the Fair Credit Reporting Act by visiting www.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf, or by writing Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

*For New York residents,* the New York Attorney General may be contacted at: Office of the Attorney General, The Capitol, Albany, NY 12224-0341; 1-800-771-7755; or https://ag.ny.gov/.

*For North Carolina residents*, the North Carolina Attorney General may be contacted at: 9001 Mail Service Center, Raleigh, NC 27699-9001; 1-877-566-7226 or 1-919-716-6000; and www.ncdoj.gov.

*For Rhode Island residents*, the Rhode Island Attorney General may be reached at: 150 South Main Street, Providence, RI 02903; www.riag.ri.gov; and 1-401-274-4400. Under Rhode Island law, you have the right to obtain any police report filed in regard to this incident. There are 2 Rhode Island residents impacted by this incident.